**IN THE COURT OF APPEALS OF IOWA**

No. 23-1653
Filed January 10, 2024

**IN THE INTEREST OF P.R.,**
**Minor Child,**

**H.H., Mother,**
        Appellant.
_____

        Appeal from the Iowa District Court for Pottawattamie County, Eric J.

Nelson, District Associate Judge.

        A mother appeals the juvenile court order terminating her parental rights.

**AFFIRMED.**

        Sara E. Benson of Meldrum & Benson Law, P.C., Council Bluffs, for

appellant mother.

        Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney

General, for appellee State.

        Roberta J. Megel of Public Defender's Office, Council Bluffs, attorney and

guardian ad litem for minor child.

        Considered by Greer, P.J., Buller, J., and Carr, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2024).

**CARR, Senior Judge.**

A mother appeals the juvenile court order terminating her parental rights. We find the termination is supported by clear and convincing evidence, the State engaged in reasonable efforts to reunify the mother and child, termination of the mother's parental rights is in the child's best interests, and an extension of time is not warranted. We affirm the termination of the mother's parental rights.

## I.      Background Facts & Proceedings

H.H. is the mother of P.R., who was born in 2013.[1] The family resided in Iowa. On August 25, 2021, the child was in New Hampshire with the mother, who was a truck driver. The mother struck the child, who was then seven years old, causing him to fall down. She threw things at him and kicked him several times. The incident was recorded by a security camera. The mother was arrested and charged with four counts of domestic abuse assault.[2] The child was returned to Iowa and placed in foster care. The child was adjudicated to be in need of assistance (CINA) under Iowa Code section 232.2(6)(b) and (c)(2) (2021).

The child subsequently revealed a history of physical abuse by the mother. The child was diagnosed with post-traumatic stress disorder (PTSD), with the following symptoms: difficulty sleeping; excessive sleep; fatigue/low energy; tearful and crying spells; anxiety; fear; hopelessness; panic; nightmares; and difficulty following instructions. The child attended individual therapy and educational-based family therapy with the foster parents. The child wrote a letter stating he did

---

[1] The child's father is unknown. Late in the case the mother suggested a person who was possibly the child's father but no DNA testing was completed. The parental rights of any putative fathers have been terminated.

[2] The mother pled guilty and was sentenced to one year in jail.

not want to see the mother because he did not trust her. He stated his mother hurt him many times, that she would kick him, hit him, and throw things at him. The child felt safe in the care of the foster parents and formed a healthy attachment with them.

The mother was released from jail in New Hampshire in August 2022, and she returned to Iowa. She attended parenting and anger management classes. The mother had weekly supervised telephone calls with the child, but he would not always interact with her. In November, the mother and child began family therapy sessions. These sessions, however, proved to be traumatic to the child and his behavior regressed. The court stated, "Unfortunately, [the child] has been in therapy since the outset of this case, but the current results are that he still wants no current relationship with his mother due to her past abuse of him."

On June 29, 2023, the State filed a petition seeking termination of the mother's parental rights. When the mother was asked if the child could be returned to her care, she responded, "I think he should be but I'm not saying like today because I do definitely realize and recognize the damage done to him." She also testified the child could not be returned to her at the time of the hearing based on "his current mental state." She asked for an additional six months to work on reunification.

The juvenile court terminated the mother's parental rights under section 232.116(1)(d), (f), and (i) (2023). The court found termination was in the child's best interests, noting,

> [The child] has been clear from the outset of the CINA case that he does not want to return to his mother. He may want some contact in the future, but he does not ever want to live with her. He does not

> feel safe with her and he does not trust her. On the other hand, he has established a relationship with the [foster family] over the past two years and he is now bonded with them.

The court did not apply any of the exceptions to termination found in section 232.116(3). The court found it would not be in the child's best interests to give the mother additional time to work on reunification "given the trauma that his therapist believes it would cause him." Also, the court found the State had engaged in reasonable efforts to reunite the mother and child. The mother appeals the juvenile court's decision.

## II. Standard of Review

Our review of termination proceedings is de novo. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). The State must prove its allegations for termination by clear and convincing evidence. *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). "'Clear and convincing evidence' means there are no serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *Id.* Our primary concern is the best interests of the child. *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014).

In general, we follow a three-step analysis in reviewing the termination of a parent's rights. *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). First, we consider whether there is a statutory ground for termination of the parent's rights under section 232.116(1). *Id.* Second, we look to whether termination of the parent's rights is in the child's best interests. *Id.* (citing Iowa Code § 232.116(2)). Third, we consider whether any of the exceptions to termination in section 232.116(3) should be applied. *Id.* But in instances where the parent does not raise a claim relating to any of the three steps, we do not address that step and instead limit our

review to the specific claim presented. *See id.* at 40 (recognizing we do not consider a step the parent does not challenge).

### III.    Sufficiency of the Evidence

The mother claims there is not sufficient evidence in the record to support termination of her parental rights. "We will uphold an order terminating parental rights where there is clear and convincing evidence of the statutory grounds for termination." *In re T.S.*, 868 N.W.2d 425, 434 (Iowa Ct. App. 2015). "When the juvenile court orders termination of parental rights on more than one statutory ground, we need only find grounds to terminate on one of the sections to affirm." *Id.* at 435. We elect to focus on the termination of the mother's parental rights under section 232.116(1)(f).[3]

For section 232.116(1)(f), the mother contests only the fourth element, claiming the State failed to prove the child could not be safely returned to her care. Section 232.116(1)(f)(4) require a showing by clear and convincing evidence that a child "could not be safely returned to the custody of [the child's] parents." *In re S.O.*, 967 N.W.2d 198, 206 (Iowa 2021).

---

[3] Section 232.116(1)(f) provides that a parent's rights may be terminated if the following have occurred:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

During the termination hearing, the mother testified the child could not be returned to her care at that time. She acknowledged the child could not be returned to her at the time of the hearing based on "his current mental state." The child's therapist testified that continued contact with the mother was harmful to the child. It would be detrimental to the child's mental health and safety to be returned to the mother. Pursuant to section 232.116(1)(f)(4), a court considers whether a child can be returned to the parent at the time of the termination hearing. *In re A.B.*, 957 N.W.2d 280, 294 (Iowa 2021). We conclude there is clear and convincing evidence in the record to support termination of the mother's parental rights under section 232.116(1)(f).

## IV. Reasonable Efforts

The mother claims the State did not engage in reasonable efforts to reunite her with the child. She claims the foster parents improperly participated in family therapy with the child, which she believes decreased the child's bond with her and increased his bond with the foster parents. In addition, the mother alleges she did not receive professional advice from the family centered services (FCS) worker, as they were in a friendship relationship, not a professional relationship.

Reasonable efforts are services to 'preserve and unify a family prior to the out-of-home placement of a child in foster care or to eliminate the need for removal of the child or make it possible for the child to safely return to the family's home.'" *In re L.T.*, 924 N.W.2d 521, 529 (Iowa 2019) (citation omitted). The reasonable-efforts requirement is not a strict substantive requirement for termination, but the scope of the efforts offered by the Iowa Department of Health and Human Services (HHS) impacts the burden of proving the elements of termination. *C.B.*, 611

N.W.2d at 493. Although HHS and allied professionals must make reasonable efforts toward reunification, "parents have a responsibility to object when they claim the nature or extent of services is inadequate." *In re L.M.*, 904 N.W.2d 835, 839–40 (Iowa 2017). An objection to services must be made before the termination hearing, or it is waived. *Id.* at 840.

The court found:

> Importantly, [a social worker] testified that it is not typical for a child who connects with another adult to have that child's connection to his or her parent disrupted. In her experience, the bond between a child and parent is pretty strong and cannot be swayed by attuning or attaching to another person, not even after several months of therapy. The Court notes this because [the mother] has consistently pointed out that family therapy initially began with the [foster family] participating in sessions. Her theory is that it was the initial family therapy in the early part of 2022, which the [foster family] participated in, that has been the barrier to reunification efforts throughout this case. However, [the child's therapist] has maintained that the [foster family] were in sessions not for attachment reasons, but to help them learn and assist [the child] with his goals of regulation by having an adult help him carry the skills he learned in therapy home with him. Therefore, the evidence weighs against [the mother's] theory as to the reason reunification has not occurred.

The court also found, "To the extent that [the mother] argues her FCS provider's relationship with her denied her reasonable efforts, the Court finds that [HHS] was unaware of the texts messages and comments made by [the FCS worker], and [the mother] never brought them to anyone's attention until the termination hearing."

The State engaged in reasonable efforts to reunite the mother with the child. The lack of progress in this case is not due to a lack of services, rather it is due to the deep trauma that the child endured and the mother's failure to fully understand the extent of that trauma. In part, this was due to her continued insistence that the

incident that led to the child's removal was a one-time lapse on her part, while the child stated there was a history of physical abuse. Continued efforts to reunite the child with the mother were detrimental to the child. The State is required only to supply those services that "are reasonable under the circumstances." *In re S.J.*, 620 N.W.2d 522, 525 (Iowa Ct. App. 2000). The State's efforts here meet that criterion.

## V.     Best Interests

The mother contends that termination of her parental rights is not in the child's best interests. In considering the best interests of a child, we give "primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional needs of the child under section 232.116(2)." *P.L.*, 778 N.W.2d at 40. "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *Id.* at 41.

After the child's removal from the mother's care, he has consistently stated he does not want to return to the mother's care. The child has stated that he does not trust the mother and does not feel safe with her. He stated his mother hurt him many times by kicking, hitting, and throwing things at him. The child has been diagnosed with PTSD due to the mother's actions. The mother and child were unable to progress in family therapy due to the trauma experienced by the child. We conclude that it is in the child's best interests to terminate the mother's parental rights.

## VI. Extension of Time

At the termination hearing, the mother asked for an extension of time. She asserts that if given more time for family therapy, the child could be returned to her care.

A six-month extension of time may be granted under sections 232.104(2)(b) and 232.117(5) if parental rights are not terminated following a termination hearing. *In re D.P.*, No. 21-0884, 2021 WL 3891722, at *2 (Iowa Ct. App. Sept. 1, 2021). An extension of time may be granted if the court "determin[es] that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." *In re A.A.G.*, 708 N.W.2d 85, 92 (Iowa Ct. App. 2005) (quoting Iowa Code § 232.104(2)(b)). "The judge considering [the extension] should however constantly bear in mind that, if the plan fails, all extended time must be subtracted from an already shortened life for the child[ ] in a better home." *Id.* (citation omitted).

The juvenile court found, "it would not be in [the child's] best interest to grant [the mother] an additional six months to continue with reunification efforts in this case given the trauma that his therapist believes it would cause him." Additional time in family therapy would be detrimental to the child, as he found contact with his mother traumatic due to his PTSD. It is not likely the child could be returned to the mother if the case was extended for six more months.

We affirm the termination of the mother's parental rights.

**AFFIRMED.**